UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

        Plaintiff,

v.

Nakia Deshaune Neal,

        Defendant.

Criminal No. 09-10 (JMR/FLN)

**ORDER AND REPORT
AND RECOMMENDATION**

---

William J. Otteson, Assistant United States Attorney, for the Government.
Andrea K. George, Assistant Federal Defender, for Defendant.

---

**THIS MATTER** came before the undersigned United States Magistrate Judge on November 25, 2009, on Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [#9], Defendant's Motion to Suppress Statements, Admissions and Answers [#10], Defendant's Motion to Disclose and Make Informant Available for Interview [#12], and Defendant's Motion to Suppress Eyewitness Identifications [#18]. The Court received testimony from Officer Bart Michael Hauge, and the Government and Defendant submitted exhibits into evidence during the course of the hearing.[1] The parties have since submitted supplemental briefs on the issues before the Court. (Doc. Nos. 27 and 28.)

---

[1] Government's Exhibit 1 is a DVD labeled "Nakia Neal Interview;" Government's Exhibit 2 is a copy of the Application for Search Warrant, Supporting Affidavit, Search Warrant, and Receipt, Inventory & Return for property in Minneapolis, MN; Government's Exhibit 3 is a copy of the Application for Search Warrant, Supporting Affidavit, Search Warrant, and Receipt, Inventory & Return for a black, 4-door vehicle; Government's Exhibit 4 is a copy of the Application for Search Warrant, Supporting Affidavit, Search Warrant, and Receipt, Inventory & Return for the person of Nakia Neal; Defendant's Exhibit 1 is page 4 of the Supplement of Off. B. Hauge, dated 3/10/2008; and Defendant's Exhibit 2 is a photocopy of a photograph of an individual with handwritten notes on the page.

The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends Defendant's suppression motions be **DENIED**.

## I. FINDINGS OF FACT

Nakia Deshaune Neal ("Defendant") has been indicted and charged with Possession with Intent to Distribute Cocaine Base on or about March 4, 2008, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). (Indictment, Doc. No. 1.)

**A. Search Warrants**

Minneapolis Police Officer Bart M. Hauge requested the warrants at issue in this case. The search warrant applications, drafted by affiant Hauge, recite the following events in support of the issuance of search warrants for Defendant's residence, vehicle and person.

An informant "recently" informed Officer Hauge that an individual known as "Nick" was distributing cocaine and crack cocaine in Minneapolis. (*See e.g.* Gov't Ex. 2 at Application 1-3.) Officer Hauge is familiar with "Nick" from a current investigation, and identified him as Defendant, who resides at an address on 25th Avenue North in Minneapolis. *Id.* Officer Hauge obtained a photo of Defendant and showed it to the informant, who positively identified Defendant as the individual he knows as "Nick."[2] *Id.*

---

[2] Officer Hauge testified at the hearing on this matter that information he had obtained from an investigation two years earlier involved a drug dealer by the name of Nakia Neal who went by the nickname "Nick," whose name had come up on "at least ten" separate occasions. Officer Hauge testified that the informant provided specific information about "Nick's" associates and the area in which "Nick" lived. He further testified that he surmised that the informant was referring to the same "Nick" based upon the area in which the informant stated this "Nick" lived. Officer Hauge then showed the informant the photo image of Defendant pictured in Defendant's Exhibit 2 (which did not contain handwritten notes on the page). (*See* Def. Ex. 2.) Officer Hauge testified that he asked the informant: "Do you know this person?" to which the informant responded: "That's Nick." Officer Hauge testified that the informant was "very certain" that the individual in the photograph was "Nick." At no time did Officer Hauge show the informant photographs of any other individuals who could be "Nick." He further estimated that the informant had known Defendant for a matter of months.

Officer Hauge had utilized the informant for a prior controlled buy from Defendant. *Id.* Officer Hauge then organized another controlled buy, which took place within 72 hours prior to the issuance of the warrants, during which the informant again purchased crack cocaine from Defendant. *Id.* Before the buy, the informant was searched for contraband and then provided with a quantity of pre-recorded buy funds. *Id.* The informant spoke with Defendant via telephone, and they agreed to meet. *Id.* While under surveillance, the informant proceeded to the meet location. *Id.* A surveillance team also observed Defendant leave the residence at the address on 25th Avenue North and enter a vehicle. *Id.* The surveillance team then followed Defendant's vehicle to the location at which he met the informant, and subsequently followed him back to the address on 25th Avenue North and observed Defendant enter the residence. *Id.* Meanwhile, Officer Hauge met with the informant after the controlled buy, who turned over to him a quantity of crack cocaine, which field tested positive. (*See e.g.* Gov't Ex. 2 at Application 1-4.)

Based upon the foregoing, search warrants for the address on 25th Avenue North, Defendant's vehicle and Defendant's person were issued on February 28, 2008. (*See e.g.* Gov't Ex. 2 at Search Warrant 2-2.) A District Court Judge for the State of Minnesota, Patricia L. Belois, signed the warrants, which authorized searches for property and items including (among other things): "Controlled substances, including but not limited to marijuana and cocaine" as well as "scales" and "cellular telephones." *See id.*

The search warrant returns indicate that, on March 4, 2008, suspected cocaine, crack cocaine and a cellular phone were recovered from Defendant's vehicle (Gov't Ex. 3 at Receipt, Inventory & Return), while a sock containing two bags of suspected cocaine, a jacket from which the sock was retrieved, and a digital scale were recovered from Defendant's residence (Gov't Ex. 2 at Receipt,

Inventory & Return).

**B. Defendant's Statements**

Law enforcement arrested Defendant in Minneapolis on March 4, 2008. Officer Hauge testified that the arrest took place at 26th Avenue North and Irving Avenue North at about 11:45 A.M, but that he was not present for Defendant's arrest. Officer Hauge had previously advised arresting officers not to talk to Defendant so that Officer Hauge could speak with him first. Upon being arrested, Defendant was moved, in handcuffs, to Officer Hauge's location at 26th Avenue North and Washington Avenue North at approximately 11:50 A.M. At that time, Officer Hauge changed the positioning of the handcuffs to the front of Defendant's body and placed Defendant in the front passenger seat of his unmarked squad vehicle. Once in the vehicle, Officer Hauge testified that he informed Defendant of his *Miranda* rights. He further testified that, after being advised of his rights, Defendant agreed to speak with Officer Hauge. He described Defendant's demeanor as very calm and very cooperative. Officer Hauge acknowledged, however, that he did not have Defendant sign a waiver of rights form at that time and that there was no recording equipment in his car.

Officer Hauge testified that he spoke with Defendant for approximately 20 minutes while he was seated in the vehicle. He advised Defendant that he had a warrant to search his house. Officer Hauge asked if there were any more drugs at the residence, to which Defendant replied that there were. Defendant also asked if he could accompany Officer Hauge to his residence for the execution of the search warrant to eliminate potential harm to his dogs and family members.

Officer Hauge and Defendant arrived at Defendant's house at approximately 12:30 P.M. Law enforcement entered the residence with keys provided by Defendant. Officer Hauge testified that

it took 20 to 30 minutes to execute the search warrant on the residence. After the execution of the warrant, Defendant was taken to the Violent Offender Task Force Office where Officer Hauge continued to interview him. Officer Hauge testified that the interview started again at the Task Force Office shortly after 1:00 P.M.

Officer Hauge did not provide Defendant with another *Miranda* warning at the Task Force Office. Officer Hauge testified that he did not "re-Mirandize" Defendant because Defendant was initially "Mirandized" on the scene approximately 90 minutes earlier, he was in constant custody from the time of his arrest, and had been talking since that time. Officer Hauge further testified that, during the interview at the Task Force Office, Defendant acknowledged that Officer Hauge had previously advised him of his rights.

The interview at the Task Force Office was video recorded. (Gov't Ex. 1.) Approximately ten minutes into the taped interview, Officer Hauge can be heard stating: "So we're sitting on you today, we stop ya, and there's drugs in the car. I come up, and I read you your rights, all that stuff, you acknowledge that you understood your rights correct?" to which Defendant ultimately responds "Correct." *Id.* Officer Hauge then acknowledges their previous conversation by stating: "And we start talking." *Id.*

Officer Hauge testified that the Task Force Office interview lasted approximately an hour, during which Defendant continued to be cooperative. Officer Hauge testified that, from the time of their initial conversation through the end of their discussion at the Task Force Office, Defendant never asked to stop the interview, never expressed discomfort, and never asked for break. Moreover, he never asked for an attorney. He further testified that, at end of the interview, Defendant expressed a need to use the facilities, a request which Officer Hauge accommodated.

5

## II. CONCLUSIONS OF LAW

### A. Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [#9] Should Be Denied.

The first issue at hand is whether the search warrant application in this case could support the issuing judge's probable cause determination. Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [#9] challenges state search warrants for Defendant's Minnesota residence, vehicle and person. Defendant contends that evidence seized pursuant to the search warrants should be suppressed because the warrants were issued without a sufficient showing of probable cause in the supporting affidavits and were executed in an unlawful manner. (Doc. No. 9.)

Under well-established Fourth Amendment jurisprudence, a valid search warrant must be supported by an affidavit providing the magistrate with a substantial basis for determining the existence of probable cause to believe a search would uncover evidence of wrongdoing. *Illinois v. Gates*, 462 U.S. 213, 236-39 (1983). Probable cause is defined as a "fair probability that contraband or evidence of a crime will be found in a particular place." *See id.* at 238. A supporting affidavit that consists of bare conclusions or conclusory allegations cannot support a finding of probable cause. *Id.* Veracity, reliability, and basis of knowledge are "highly relevant" in determining whether a supporting affidavit establishes probable cause. *Alabama v. White*, 496 U.S. 325, 328 (1990).

Whether probable cause exists depends on the totality of the circumstances. *See Gates*, 462 U.S. at 238; *United States v. Gabrio*, 295 F.3d 880, 882-83 (8th Cir. 2002). In evaluating the existence of probable cause, courts do not consider each piece of information independently, but instead consider the cumulative meaning of all facts taken together. *See United States v. Allen*, 297

F.3d 790, 794 (8th Cir. 2002).

Given the totality of the circumstances in this case, probable cause existed to support the issuance of the search warrants for Defendant's residence, vehicle and person. First, Officer Hauge received information from an informant about Defendant's cocaine and crack cocaine dealing operation in Minneapolis, MN. He then confirmed Defendant's identity with the informant, who identified Defendant, in his booking photo, as the individual he knew as "Nick." Additionally, Officer Hauge orchestrated two controlled buys, during which the informant purchased a quantity of cocaine directly from Defendant. During the second controlled buy, which took place within 72 hours prior to the issuance of the warrants, not only did officers observe Defendant exit his residence on 25th Avenue North, but Defendant was observed entering his vehicle and then followed en route to the meet location. After the informant and Defendant met, the informant turned over an amount of crack cocaine to Officer Hauge, while officers observed Defendant return home, exit his vehicle and subsequently re-enter his residence. These facts, taken together, establish more than a "fair probability that contraband or evidence" related to a cocaine dealing operation would be found at Defendant's residence, in his vehicle and on his person.

In sum, this Court concludes that Officer Hauge's application and affidavit are sufficient to support a finding of probable cause for each of the warrants to issue.

    **B.**    **Defendant's Motion to Suppress Eyewitness Identifications [#18] Should Be Denied.**

Defendant also argues that the photographic identification of Defendant by the informant in this case was so unnecessarily suggestive as to deprive Defendant of due process of law. (Doc. No. 18.)

Due process requires suppression of a pretrial identification "if, under the totality of the

7

circumstances, the confrontation procedure was so unnecessarily suggestive and conducive to irreparable mistaken identification as to be fundamentally unfair to the defendant." *Harris v. Wyrick,* 644 F.2d 710, 712 (8th Cir. 1981) (citing *Stovall v. Denno*, 388 U.S. 293, 302 (1967)). "It is the likelihood of misidentification which violates a defendant's right to due process." *Neil v. Biggers*, 409 U.S. 188, 198 (1972). "Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous." *Id.*

"A two-part test governs the admissibility of identification evidence." *United States v. Williams*, 340 F.3d 563, 567 (8th Cir. 2003). First, the Court must determine whether the identification procedures were "impermissibly suggestive." *Id.* Second, if the procedures were impermissibly suggestive, the Court must "examine the totality of the circumstances to determine whether the suggestive procedures created a very substantial likelihood of irreparable misidentification." *Id.* In the second analysis, the Court must balance the following five factors: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Id.* (citing *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977)).

"[S]ingle photograph arrays are considered impermissibly suggestive in the Eighth Circuit." *United States v. Murdock*, 928 F.2d 293, 297 (8th Cir. 1991). Identifications from single photograph arrays may nonetheless be admissible where this suggestive procedure does not create "a very substantial likelihood of irreparable misidentification." *See e.g, United States v. Hines*, 387 F.3d 690, 694 (8th Cir. 2004) (upholding the district court's denial of a motion to suppress based on a 5-

factor analysis of the totality of the circumstances of the identification).

Here, Officer Hauge showed the informant a single booking photo of Defendant whom he identified as "Nick." Assuming, without deciding, that the single photograph array was impermissibly suggestive, this Court finds that the identifying procedure did not create "a very substantial likelihood of irreparable misidentification" sufficient to deny Defendant of his right to due process.

Based upon his previous drug transactions with Defendant as well as his knowledge of Defendant's role in the community as a crack cocaine and cocaine dealer, the informant had the opportunity, and likely multiple opportunities, to view Defendant while engaged in criminal activity prior to his identification of Defendant in his booking photograph. Additionally, it was the accuracy of the informant's description of "Nick's" drug dealing operation, known associates, and area in which "Nick" lived, which led Officer Hauge to believe he was familiar with the same individual from other investigations. Furthermore, Officer Hauge testified that the informant was "very certain" that the individual pictured in the photograph was "Nick." And, although Officer Hauge could not specifically state how long the informant had known Defendant, he estimated that it had been a matter of months. Defendant's identity was further confirmed during the two controlled buys orchestrated by Officer Hauge.

Therefore, this Court finds that, based on the totality of the circumstances of the identification and the informant's prior knowledge of Defendant, there was little likelihood of misidentification in this case, and thus finds the informant's identification of Defendant as "Nick" sufficiently reliable to warrant admissibility.

    **C.**    **Defendant's Motion to Suppress Statements, Admissions and Answers [#10]**

**Should Be Denied.**

The final dispositive issue before the Court is whether Defendant's statements to law enforcement should be suppressed. (Doc. No. 10.) Defendant appears to contend that suppression is appropriate because his statements to Officer Hauge were obtained in violation of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966).

Before any evidence obtained as a result of a custodial interrogation may be used against a defendant at trial, the Fifth Amendment requires that a defendant in custody and subject to interrogation by law enforcement be advised of his constitutional rights and that he make a knowing, intelligent and voluntary waiver of those rights. *Id.* at 444. A suspect in custody must be informed that he has the following rights: (1) the right to remain silent; (2) that his statements may be used against him in a court of law; (3) that he has the right to an attorney; and (4) that if he cannot afford an attorney, one will be appointed. *Id.* at 444, 478-479. Law enforcement officials must use either this formulation of the warnings or "other procedures [that] are at least as effective in apprising accused persons of their right of silence and in assuring a continuous opportunity to exercise it." *Id.* at 467. Suspects need to be informed of these *Miranda* rights before questioning begins. *Id.* at 469-70. Statements elicited from a suspect in violation of *Miranda* are inadmissible. *Stansbury v. California*, 511 U.S. 318, 322 (1994). After the warnings are given, if the suspect indicates that he wishes to assert these rights, the interrogation must stop. *Miranda*, 384 U.S. at 473-74.

After being advised of his *Miranda* rights, a suspect's waiver of his Fifth Amendment privilege against self-incrimination is only valid if it is voluntarily, knowingly, and intelligently made. *Id.* at 444; *United States v. Syslo*, 303 F.3d 860, 866 (8th Cir. 2002). A waiver is knowing

if it is "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). It is voluntary if it is "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id*. It is the Government's burden to show by a preponderance of evidence that the suspect's waiver meets these standards. *Miranda*, 384 U.S. at 473; *Colorado v. Connelly*, 479 U.S. 157, 168 (1986).

A court determines whether *Miranda* rights were knowingly and voluntarily waived under a totality of the circumstances test. *Tippitt v. Lockhart*, 859 F.2d 595, 598 (8th Cir. 1988). The court looks to such factors as the age and education level of the defendant, lack of advice as to constitutional rights, length of detention, "repeated and prolonged nature of questioning," and the use of physical punishment. *Id*. A promise of leniency in the process of obtaining a confession does not render the it *per se* involuntary. *Id*. at 597; *United States v. Kilgore*, 58 F.3d 350, 353 (8th Cir. 1995).

Moreover, a failure of law enforcement to re-read the *Miranda* warning, does not *per se* result in the exclusion of a defendant's later statements. *See United States v. Ferrer-Montoya*, 483 F.3d 565, 569-70 (8th Cir. 2007). Where a defendant is administered his rights and then, one hour later, after remaining in police custody, acknowledges that he was made aware of his rights and understood those rights, where he alleges no coercive conduct by law enforcement, where no evidence is presented that the warning had gone stale, and where the defendant does not invoke his rights, a second, full recitation of the *Miranda* warning is unnecessary. *Id.*; *see also McDowell v. Leapley*, 984 F.2d 232, 234 (8th Cir. 1993) ("Even if [the defendant] was in custody, the warning given at the outset of the interrogation was adequate to apprise [the defendant] of his rights, and the

officers were not required to repeat it . . . .")

Here, it is uncontested that Officer Hauge recited the *Miranda* warning to Defendant when he was placed into Officer Hauge's unmarked squad car following his arrest. This Court finds that Defendant knowingly and voluntarily waived his *Miranda* rights at that time. Although Defendant did not sign a waiver of rights form, Officer Hauge testified that Defendant was very calm and very cooperative throughout their conversation. At no time, including the continued interrogation at the Task Force Office, did Defendant express discomfort or ask to stop the interview, and he never invoked his right to an attorney.

Furthermore, this Court finds that Officer Hauge's failure to recite Defendant's *Miranda* rights a second time is insufficient to warrant suppression of the statements he made at the Task Force Office. Defendant was in continuous custody from the time of his arrest and, during the course of the interview at the Task Force Office, Defendant was reminded by Officer Hauge of the initial recitation of his rights. Defendant acknowledged that he had heard those rights and understood them. In addition, the interview in this case was comprised of a twenty-minute session in Officer Hauge's squad car as well as an approximately one-hour session at the Task Force Office. Defendant has presented no evidence of coercive conduct by law enforcement and has failed to demonstrate that the initial warning had become "stale" by the time the questioning resumed at the Task Force Office. Although approximately 90 minutes passed between the initial recitation of the *Miranda* warning and the continuation of the interview at the Task Force Office, this Court finds such a distinction from the facts of *Ferrer-Montoya* immaterial, and consequently insufficient to warrant suppression. *See Ferrer-Montoya,* 483 F.3d at 569-70.

In sum, this Court finds that Defendant's initial waiver of his rights to be knowing, voluntary

and intelligent. This Court further concludes that Officer Hauge was not required to recite the *Miranda* warning a second time prior to questioning Defendant at the Task Force Office. Therefore, suppression of Defendant's statements is not warranted**.**

### III.     ORDER AND RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Disclose and Make Informant Available for Interview [#12] is **GRANTED** to the extent the Government intends to prove at trial any fact as to which the informant was a witness, whether or not the Government intends to call the informant to testify. The Government represented at the hearing that it does not intend to call the informant as a witness, however, to the extent that it intends to offer any evidence as to which the informant was a witness, the Government shall disclose the identity of the informant and make him/her available for interview with defense counsel prior to trial.

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motions to Suppress be **DENIED** as follows:

1. Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [#9] Should Be **DENIED**;
2. Defendant's Motion to Suppress Statements, Admissions and Answers [#10] Should Be **DENIED**; and
3. Defendant's Motion to Suppress Eyewitness Identifications [#18] Should Be **DENIED**.

DATED: January 13, 2010                             *s/ Franklin L. Noel*
                                                                            FRANKLIN L. NOEL
                                                                            United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **January 27, 2010**, written

objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **January 27, 2010,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.